UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MELISSA D. TUCKER, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:16-CV-00679 JAR |
| NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) |
|     Defendant. | ) ) ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Melissa D. Tucker's ("Tucker") applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*

### I. Background

On October 28, 2013, Tucker protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging disability beginning September 18, 2013, due to connective tissue disease, lupus, memory problems, Graves' disease, and fibromyalgia. After her application was denied at the initial administrative level, Tucker requested a hearing before an administrative law judge ("ALJ"). A hearing was held on January 21, 2015. The ALJ issued a written decision denying Tucker's application on

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

January 29, 2015. On March 24, 2016, the Appeals Council of the Social Security Administration denied Tucker's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

Tucker filed this appeal on May 16, 2016. (Doc. 1.) The Commissioner filed an Answer. (Doc. 7.) Thereafter, Tucker filed a Brief in Support of her Complaint (Doc. 17), the Commissioner filed a Brief in Support of the Answer (Doc. 22), and Tucker filed a Reply Brief (Doc. 23).

## II. Facts

The Court adopts Tucker's Statement of Facts (Doc. 17-1) as supplemented by the Commissioner's Response to Tucker's Statement of Facts (Doc. 22-1). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Brantley v. Colvin*, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f),

3

416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. *Brantley*, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Andrews v. Colvin*, 791 F.3d 978, 983 (8th Cir. 2015); *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### IV. Decision of the ALJ

The ALJ determined that Tucker meets the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful employment since September 18, 2013, the alleged onset date of disability. (Tr. 15.) As relevant to this appeal, the ALJ determined that Tucker had the severe impairments of fibromyalgia, Graves' disease, connective tissue disease, obesity, a history of lap band removal surgery, and possibly lupus. (*Id.*)

After considering the entire record, the ALJ determined that Tucker had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) except that:

> She cannot climb ladders, ropes, or scaffolds. In addition, she can perform no more than occasional climbing on ramps and stairs; and occasional balancing, stooping, kneeling, crouching and crawling. [Tucker] should avoid concentrated exposure to temperature extremes, and she would be limited to frequent, but not repetitive, handling and fingering. She would need an unskilled, simple, routine, repetitive job. Finally, she must have access to a bathroom.

(Tr. 19.) The ALJ further found that Tucker is unable to perform any past relevant work but determined that there are jobs that exist in significant numbers in the national economy that

5

Tucker can perform, citing Social Security Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404, Subpt. P, App. 2. (Tr. 21.) The ALJ therefore concluded that Tucker had not been under a disability from September 18, 2013—the alleged onset date—through the date of her decision, January 29, 2015. (Tr. 22.)

## V. Discussion

In her appeal of the Commissioner's decision, Tucker argues that the ALJ's decision regarding Tucker's RFC was not supported by substantial evidence in the record. (Doc. 17 at 2.) In addition, Tucker argues that she is entitled to remand because the Appeals Council did not consider the new, relevant evidence she submitted. (*Id.* at 8-11.)

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of her credible limitations. *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Voegtlin v. Colvin*, No. 4:11CV1980 HEA, 2014 WL 651378, at *4 (E.D. Mo. Feb. 19, 2014) (citing *McCoy*, 648 F.3d at 605). It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

The ALJ determined that, while Tucker's "medically determinable impairments could reasonably be expected to cause symptoms, her statements concerning the intensity, persistence and limiting effects of such symptoms were not entirely credible." (Tr. 19.) Tucker asserts that the ALJ's RFC finding "fails to take into consideration [her] complaints of fatigue and failed to evaluate those complaints in accordance with . . . *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th

Cir. 1994)." (Doc. 17 at 5.) While Tucker does not expressly frame this as a credibility issue, the Court will consider the ALJ's credibility determination, as her RFC finding was based on the diminished weight given to Tucker's subjective complaints about fatigue. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski*, 739 F.2d at 1322. The ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. *Id.* (citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir.1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

The ALJ agreed that "pain and fatigue likely prevent [Tucker] from performing tasks that she was once able to perform" and that she "takes a variety of medications, whose side effects add to [her] difficulties." (Tr. 19.) Nonetheless, the ALJ identified several reasons to discount Tucker's subjective claim that her fatigue prevented her from working. She noted that while "fatigue eventually sets in," Tucker is able to do some laundry and wash some dishes each day.

7

(Tr. 20.) Likewise, Tucker's fatigue does not prevent her from going out to dinner or driving to visit her parents on a somewhat regular basis. (*Id.*) The ALJ also observed that Tucker's symptoms began nearly a year before her alleged onset date and noted that medical records report that her symptoms were well-managed with medication and treatment. (*Id.*), *see Moore* 572 F.3d at 525 (citing *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997)) (concluding that impairments that can be controlled through treatment or medication are not considered disabling). To that end, the ALJ concluded that Tucker's prior "apparent ability to work with [her] underlying impairments detracts from the credibility of her allegations." Likewise, several of her symptoms were related to a lap band placed in 2006, which has since been removed. (Tr. 20.) In addition, the ALJ noted that none of Tucker's physicians had placed any functional restrictions on Tucker's activity, and had even recommended exercise. (Tr. 19.)

Tucker responds that her daily activities "were very minimal and were not consistent with an ability to perform work on a full time sustained basis." (Doc. 17 at 10.) She cites *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004): "[I]n the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." (quoting *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003)). To be sure, Tucker's daily activity is not, in itself, substantial evidence of employability. But when considered alongside the absence of debilitating symptoms in her medical record, Tucker's ability to engage in the daily activities of life contradicts her allegations of total impairment. (*See, e.g.*, Tr. 375; Tr. 392-93; Tr. 481, 484, 487-99 (no significant complaints of pain, reduced range of motion, swelling); Tr. 490 (report of fatigue as a side-effect of specific medication).)

8

The Court finds the ALJ considered Tucker's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from her credibility. Because the ALJ's determination is supported by good reasons and substantial evidence, the Court defers to her determination. *Cobb v. Colvin*, No. 2:13CV0115 TCM, 2014 WL 6845850, at *14 (E.D. Mo. Dec. 3, 2014) (internal citations omitted); *see also Polaski*, 739 F.2d at 1322.

After discrediting Tucker's allegations regarding her total impairment, the ALJ crafted an RFC finding that incorporated the medical evidence and opinion testimony. She gave "some weight to the assessment completed by the state DDS consultant," but noted that more "recent evidence . . . painted a more complete portrait of [Tucker's] abilities and limitations." (Tr. 21.) The ALJ examined Tucker's medical records prepared by her treating physicians and determined that they did not support Tucker's claim that she was unable to work. (*See, e.g.*, Tr. 375 (on the day after her alleged onset date, she reported no pain in her extremities); Tr. 392-93 (less than a month later, her rheumatologist reported no joint tenderness and normal range of motion, strength, and muscle tone); Tr. 481, 484, 487-99, 490-91 (no significant changes reported at follow-up exams).) Still, the ALJ's RFC finding precludes Tucker's past work, limits her to sedentary work with additional restrictions on physical activity, and requires access to a bathroom.

Tucker argues that the RFC ignores the fact that she struggles with absenteeism because she cannot predict if or when she might have to miss work. (Doc. 17 at 7-8.) She cites the vocational expert's testimony that more than one absence a month makes employment impossible and notes that this was the very reason she could not continue her last job. (*Id.*) Tucker also points to answers to interrogatories received from her rheumatologist, which she characterizes as new material evidence that excessive absenteeism would not be uncommon for

people with Tucker's symptoms. (*Id.*; Doc. 17-2.) She further argues that the Appeals Council's failure to consider the interrogatories is an independent basis for remand, citing *Lamp v. Astrue*, 531 F.3d 629, 633 (8th Cir. 2008). (Doc. 17 at 8-10.)

It is true that the ALJ's decision does not expressly discuss Tucker's absenteeism. However, the ALJ's discussion of Tucker's credibility and her finding that Tucker's RFC allows for future employment clearly indicate that Tucker failed to persuade the ALJ that attendance would be an issue. Moreover, Tucker's self-serving representation that she would exceed the one-day-per-month limit outlined by the vocational expert is not supported by her medical records, which fail to record the level of fatigue and acute illness Tucker describes. For these reasons, the Court finds the ALJ's decision not to include absenteeism in the RFC is supported by substantial evidence in the record. *See Blackburn v. Berryhill*, No. 16-3140-CV-S-ODS, 2017 WL 1968320, at *3 (W.D. Mo. May 12, 2017) (plaintiff's representation that she would miss 1.5 days of work per month was not supported by objective medical evidence).

Moreover, Tucker's proffered interrogatories do not compel a contrary finding—they merely stand for the general proposition that "excessive absenteeism, even in a sedentary job, [would] be a common problem for someone who has symptoms of the disorders" diagnosed in Tucker's case. (Doc. 17-2.) That is not evidence that Tucker, herself, suffered with that problem, especially considering the lack of such complaints in the medical records and evidence.

Finally, Tucker's reliance on *Lamp* is misplaced. "When the Appeals Council denies review of an ALJ's decision after reviewing new evidence," federal courts "do not evaluate the Appeals Council's decision to deny review, but rather ... determine whether the record as a whole, including the new evidence, supports the ALJ's determination." *McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (quoting *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir.

2000)). The issue for the Court is whether the record as whole, including the new evidence, supports the ALJ's determination. The supplemental interrogatories provided no new evidence of significance. They were not likely to change the Commissioner's decision, and therefore, do not justify remand. As discussed above, the ALJ's determination is supported by the record— even considering the interrogatories.

## VI. Conclusion

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 29th day of September, 2017.

*John A. Ross*
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**